# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DERRICK TAYLOR, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00443 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Derrick Taylor has worked over the years at custodial and cleanup jobs and on a factory assembly line. He stopped working at age forty due to hip pain. *See* Tr. 111, 172, 536-37. On June 30, 2003, he sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

After initial denials of his applications and a total of four administrative hearings (Tr. 526-47, 548-75, 576-611, 612-62), Administrative Law Judge (ALJ) Thaddeus J. Armstead Sr. issued a written decision denying Plaintiff's applications. In doing so, ALJ Armstead concluded that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr. 15-23).

This Court has jurisdiction to review ALJ Armstead's decision because it

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

constitutes the Commissioner's final determination concerning Plaintiff's DIB and SSI applications. *See* 42 U.S.C. §§405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and awarding benefits, or in the alternative, an Order remanding the matter for further administrative review. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     BACKGROUND

### A.     Plaintiff and His Testimony

Plaintiff asserts that he has been under a "disability" beginning on December 28, 2001. During the ALJ's first hearing, Plaintiff testified that his biggest medical problems included his hip pain, diabetes, and depression. (Tr. 540, 544). His hip, leg, and back pain allow him to sit for only ten minutes at a time and prevent him from walking. (Tr. 559). He described his pain as a "burning sensation" and testified, "I couldn't hardly sit, stand, lay down, sleep. Anytime I get up I collapse. It was just painful, sharp pain ... in my hips." (Tr. 586).

Plaintiff testified during the October 2006 administrative hearing that he was depressed because his parents and his twin brother had died. (Tr. 559-60). He explained, "It's just every time I think about my brother, my twin and my family I cry all the time and everything. I just, I can't get it together. I don't have nobody around, I just don't have family no more." (Tr. 562).

During his administrative hearing in May 2007, Plaintiff testified that an MRI revealed the presence of a tumor in his low back. (Tr. 587-89). According to Plaintiff, Physicians told him that he needs surgery to determine if it is cancerous or not. *Id*. Plaintiff was experiencing pain in his neck "all the way down to where the tumor is." (Tr. 589). He testified that his pain levels are severe, and he described it as a sharp pain along

2

with numbness in his "legs and ... arms and everything." (Tr. 590). He experiences pain daily. He explained, "I can't sit for a long time, I can't stand, I can't walk, because when I do the pain shoots in there, in both of the hips, my back, my neck, it's everywhere." *Id.*

At the time of his claimed disability onset, Plaintiff's age (40 years old) placed him the category of a person "younger person" for purposes of resolving his SSI and DIB applications. *See* 20 C.F.R. §§404.1563(c); 416.963(c).[2] Plaintiff attended high school through the eleventh grade and thus is considered to have a "limited" education for social security purposes. 20 C.F.R. §404.1564(b)(3).

### B. Medical Opinions

**Dr. Martinez**

In 2003 Plaintiff saw Dr. Martinez because pain he had "been having ... with his right hip for about a year and a half...." (Tr. 225). Dr. Martinez's examination showed no abnormal findings. Dr. Martinez reviewed the MRI findings, noted a contusion of the acetabulum and indicated that it "could ... take time to get better or progress to a worsened condition." *Id.* One week later, Dr. Martinez "put him on crutches nonweight bearing to the lower-left extremity to see what that does for the contusion on the acetabulum."[3] (Tr. 224).

Following this August 2003 examination, Dr. Martinez completed a two-page form indicating his opinion that Plaintiff should not do any walking, standing, or lifting, and was markedly limited in his ability to bend for thirty days to nine months. (Tr. 277).

In September 2003 Plaintiff continued to report hip pain and was "extremely upset

---

[2] The remaining citations to the Regulations will identify only the pertinent DIB Regulations, with full knowledge of the corresponding SSI Regulations. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) .

[3] The "acetabulum" is the cavity or depression on the lateral surface of the hip bone that provides the socket into which the head of the femur fits. Taber's Cyclopedic Medical Dictionary at 19 (19th Ed. 2001).

3

because he can't work," according to Dr. Martinez. (Tr. 221). Dr. Martinez noted that there was swelling that could be seen on simple x-rays such that the medial psoas muscle was larger than the right. "The MRI indicated only edema on the acetabulum in the weight bearing area." *Id*. Dr. Martinez noted that problem was still "very active" and continued Plaintiff on crutches with minimal or no weight bearing. *Id*. Because Plaitniff was also frustrated with his pain and no money and no work, Dr. Martinez referred him to "Mental Crisis." *Id*.

Dr. Martinez reported in October 2003 that Plaintiff was reporting "a lot of pain." (Tr. 219). Dr. Martinez wrote, "The patient was explained before that the MRI on the right hip was normal and that there was nothing else that I could offer to take care of his pain...." *Id*. Dr. Martinez therefore sent Plaintiff back to his primary care physician and recommended that he seek treatment with a pain clinic. *Id*.

**Dr. Oza**

In January 2006 Plaintiff saw a consultative examiner, Dr. Oza. (Tr. 410-19). Plaintiff reported "symptoms of not feeling well for two years but was diagnosed to have diabetes last year." (Tr. 410). He complained of tingling and numbness in his feet and pain. Dr. Oza reported that Plaitniff also "complains of chronic low back pain for more than ten years when he was playing basketball, now the pain is continuous throughout his thoracolumbar spine and it gets worse ... on any lifting, bending, stooping." (Tr. 411).

On examination, Plaintiff complained of pain on touching of the thoracolumbar spine. *Id*. Straight leg raising caused low back pain and groin pain at 45 to 60 degrees of elevation on the right side and 80 degrees on the left. Range of motion of his right hip caused pain. Dr. Oza noted decreased pinprick touch vibration in a stocking distribution in the lower extremities. Reflexes in the lower extremities could not be obtained. Plaitniff walked with a cane favoring the right lower extremity. *Id*. Dr. Oza thought that the neurological changes were consistent with a diabetic peripheral neuropathy. Dr. Oza was unsure about the etiology of his hip pain. (Tr. 412).

4

Dr. Oza opined that Plaintiff could not lift or carry more than 5 to 10 pounds; he could not stand or walk for more than 10 to 15 minutes; he could sit for 10-15 minutes at a time because of right hip pain. (Tr. 417). Dr. Oza thought that Plaintiff should never stoop, crouch, kneel, or crawl and should only occasionally climb or balance. (Tr. 418).

**Additional Medical Records**

In August 2006 Plaintiff underwent a lumbar MRI without contrast, which revealed arachnoiditis with "clumping and angulation of nerve roots." (Tr. 421).

MRIs with and without contrast were performed on Plaintiff's lumbar region on August 21, 2006. (Tr. 420). These showed a very vascular intradural mass at the L2-3 disc level on the right and very prominent vessels arising from the mass and extending up and down the spinal cord. *Id*. A physician observed, "The mass is clearly intradural and compresses the nerve roots within the right aspect of the spinal canal. Undoubtedly, it is entangled with the nerve roots of the cauda equina." *Id*.

Plaintiff saw Dr. Narayan at the Mayfield Clinic for consultation on September 11, 2006. (Tr. 495-503). On examination, Dr. Narayan noted deep tendon reflexes could not be elicited but otherwise the examination was normal. (Tr. 502). Dr. Narayan thought that the MRI was consistent with an arteriovenous malformation; Dr. Narayan did not think it was a tumor. (Tr. 503). She also did not think that the arteriovenous malformation explained Plaintiff's low- back pain. (Tr. 503).

Subsequent MRIs were performed on September 21, 2006 showing an extremely vascular mass-like lesion along the margin of the distal conus rightward with an epicenter at the L2-3 level. (Tr. 476-77).

Plaintiff underwent a diagnostic spinal angiogram on September 22, 2006. (Tr. Tr. 478-82). The diagnostic impressions included "hypervascular, intradural paraconal tumor mass at the L2-L3 vertebral level." (Tr. 482).

In a two-page report on September 28, 2006, Dr. Stutes, who treated Plaintiff at the Samaritan Family Care (Tr. 422-52, 469-70, 591), opined that Plaintiff could lift 1 pound

occasionally; could stand/walk 1 hour a day; could sit for only 1 hour a day; could not rotate or twist his lumbar spine; and could not use his feet for repetitive foot/leg controls. (Tr. 469). Dr. Stutes noted that Plaintiff's ability to reach above his shoulder was limited to occasional. *Id.* Dr. Stutes thought that Plaintiff should avoid bending or walking on uneven surfaces. (Tr. 470). Dr. Stutes did not explain his opinions. *See* Tr. 469-70.

Plaintiff saw a neurovascular specialist, Dr. Abruzzo, on October 16, 2006. Dr. Abruzzo reviewed all the special studies and felt they were most suggestive of a spinal hemangioblastoma. (Tr. 485). He recommended further testing, including an MRI of the brain, given Plaintiff had a sibling with a brain tumor. He also agreed with a referring physician, Dr. Zuccarello (Mayfield Clinic), that a tumor resection would be appropriate with a preoperative tumor embolization to decrease blood flow to the tumor. *Id*.

**Dr. Manders**

Dr. Manders, a board certified pain medicine and neurosurgery specialist, testified during two of Plaintiff's administrative hearings. Dr. Manders testified that the tumor in the region of L1-L2 "is probably the underlying cause of his pain, but it only partially explains all of his disability in that a tumor in this location will cause weakness and eventual paralysis of the lower extremities. It has nothing to do with his upper extremities or anything of that nature. It will be painful and can be very painful in the low back, but the main problem, of course, it the pressure on the nerve roots...." (Tr. 596). Dr. Manders was somewhat puzzled that Plaintiff had not seen, or been examined by, a neurologist. *Id.* He therefore felt that the evidence in the administrative record was insufficient to determine whether Plaintiff met the criteria of a Listing-level impairment. (Tr. 596, 598). Dr. Manders noted, "it makes sense that this tumor would cause his difficulty in his lower extremities, but there's no neurological exam to verify that." (Tr. 599).

Dr. Manders testified at the hearing in July 2007. (Tr. 619-47). He stated that the angioma documented in the record could account for Plaintiff's numbness and tingling.

(Tr. 621). Dr. Manders noted, however, that the treating doctors did not believe the tumor accounted for all of Plaintiff's symptoms. (Tr. 622). Further, neurological studies were within normal limits, except as affected by diabetic neuropathy. (Tr. 623). Dr. Manders felt that while Plaintiff might have some sensory changes, he did not have any motor loss on testing sufficient to meet a neurological listing (Listing 11.04). (Tr. 625). Dr. Manders confirmed that the underlying diagnosis was a spinal cord angioma, which he described as a clump of blood vessels rather than a tumor. (Tr. 625-26). He indicated that the angioma did not appear to be compressing on nerve roots at this time, although it could "subjectively be causing him to have the numbness and tingling down his legs." (Tr. 626). Dr. Manders indicated that these symptoms were also compatible with diabetic neuropathy. (Tr. 631).

On cross examination, Dr. Manders agreed that the problems documented radiographically could include spinal arachnoiditis and such a condition could cause a burning sensation in the legs. (Tr. 637, 639). Dr. Manders agreed that if Plaintiff's subjective complaints were accepted, he would equal Listing 1.04B. (Tr. 645). Dr. Manders also noted that there is no question that the arachnoiditis existed long before the MRI dated August 9, 2006, which documented it. (Tr. 650). Dr. Manders thought, however, that the arachnoiditis seen on the MRI was not severe but more likely associated with the angioma. (Tr. 650).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined and the Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.     The ALJ's Decision

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured-status requirement for DIB eligibility on December 28, 2001, his claimed disability onset date, through March 31, 2006. (Tr. 22). The ALJ also found at Step 1 that Plaintiff had not engaged in substantial gainful activity since his claimed disability

onset date. (Tr. 22).

The ALJ found at Step 2 that Plaintiff has the severe impairments of diabetes mellitus, spinal cord angiomas, sensory peripheral neuropathy, mild dysthymic, vertebrogenic disorder, an spinal arachnoiditis. (Tr. 22).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that met or equaled the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 22).

At Step 4 the ALJ concluded that Plaintiff had the Residual Functional Capacity to perform medium work with the limitation to simple repetitive tasks.[4] The ALJ further found that Plaintiff was able to perform his past relevant work as a janitor or housekeeper. (Tr. 22). Because the ALJ concluded that Plaintiff could perform his past relevant work, the ALJ stopped his sequential evaluation and concluded that Plaintiff was not under a disability and thus not eligible to receive DIB or SSI. (Tr. 22-23).

**IV.     JUDICIAL REVIEW**

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*.

---

[4] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

*See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. DISCUSSION

### A. <u>Medical Source Opinions</u>

Plaintiff contends that the ALJ erred in his assessment of the opinions provided by both his treating physician, Dr. Martinez, and by consultative physician Dr. Oza. Plaintiff also contends that the ALJ erred by failing to mention the opinions provided by another treating physician, Dr. Stutes.

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation focuses first on treating medical sources, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating

10

physician rule does not apply. *Id.*

If the ALJ concludes that the treating physician rule does not require controlling weight to be placed on a treating medical source's opinions, the evaluation of those opinions has only just begun. The ALJ must continue to evaluate the treating source's opinion under several remaining factors described by the Regulations, including "supportability," "consistency," "specialization," and "other factors" brought to the ALJ's attention. 20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

In the present case, the ALJ recognized that "Dr. Martinez reported that the claimant would be unemployable for nine months or less.... However, this fails to meet the durational requirement of twelve months or longer." (Tr. 19). A review of the form Dr. Martinez completed indicated that he checked a box indicating that Plaitniff's physical and/or mental limitations were expected to last between thirty days and nine months. (Tr. 277). The record therefore supports the ALJ's conclusion that Dr. Martinez's opinions do not support the conclusion that Plaintiff's limitations last long enough, at least twelve months, to meet the duration requirement of the Social Security Act. *See* 42 U.S.C. §423(d)(1)(A). The Commissioner correctly points out that Dr. Martinez's opinions about such finite restrictions were reflected in his conservative treatment of Plaintiff with anti-inflammatory medication. Dr. Martinez also did not

11

provide any supporting explanation in the form he completed, noting only that his opinions about Plaintiff's limitations were based on "physical examination" (Tr. 277) without referring to any objective test results that supported the limitations he believed applied to Plaintiff and without providing any further reason for his opinions.. *See* Tr. 276-77. As a result, the ALJ did not err as a matter of law in rejecting Dr. Martinez's opinions and substantial evidence supported the ALJ's rejection of Dr. Martinez's opinions.

Turning to Dr. Oza's opinion that Plaintiff was limited to sedentary work, the ALJ rejected that opinion as unsupported by the results of Dr. Oza's physical examination and by "conflicting responses concerning maximum walking or standing ability over an eight-hour period, indicating that he [Dr. Oza] is not sure." (Tr. 20). The ALJ did not err as a matter of law because he rejected Dr. Oza's opinions based on the legal criteria permitted by the Regulations. *See* 20 C.F.R. §404.1527(d)(3). Substantial evidence supported the ALJ's reasons for rejecting Dr. Oza's opinions because certain findings in his report did not support his limitation of Plaintiff to sedentary work. For example, Dr. Oza observed that Plaintiff had full strength throughout his body and a full range of motion in his cervical spine, shoulders, elbows, and wrists (Tr. 413-15), and he had nearly full range of motion in his dorsolumbar spine, *see* Tr. 415. Substantial evidence thus supported the ALJ's rejection of Dr. Oza's opinions.

Plaintiff is correct that the ALJ erred by not evaluating the opinions provided by his treating physician, Dr. Stutes, in September 2006. *See* Tr. 469-70; *see also Bowen*, 478 F.3d at 747 (ALJ erred by completely failing to acknowledge the opinion of treating psychologist). Yet the Commissioner correctly argues that this constituted harmless error because Dr. Stutes' opinions were so patently deficient that the ALJ and the Commissioner could not possibly credit them. *See Wilson*, 378 F.3d at 547. Dr. Stutes merely checked a list of boxes on a brief two-page form without providing any supporting explanation and without referring to supporting test results. *See* Tr. 469-70. Dr. Stutes,

moreover, simply offered no reason at all for his opinions. *See id*. The ALJ's error in overlooking or ignoring Dr. Stutes' opinions was therefore harmless. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 508 (6th Cir. 2005)(error in not evaluating treating physician's opinion was harmless where physician never explained his opinions).

Accordingly, Plaintiff's first assignment of error lacks merit.

B.   **Credibility**

Plaintiff acknowledges that the ALJ "recited the appropriate legal rules governing the evaluation of pain." (Doc. #7 at 16). Plaintiff argues that the ALJ erred by failing to apply those rules to the evaluation of his pain. Plaintiff emphasizes that the Regulations require ALJs to explain their credibility determinations, mandating that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." (Doc. #7 at 16)(quoting *Rogers*, 486 F.3d at 248, citing (in turn) Social Security Ruling 96-7p).

"'There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record.'" *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(quoting *Jones v. Commissioner of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)(other citation omitted). "However, 'an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability.'" *Cruse*, 502 F.3d at 542 (quoting in part *Jones*, 336 F.3d at 476, citing *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). "Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility." *Cruse*, 502 F.3d at 542.

"[T]he ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247

13

(quoting in part Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *4). Substantial evidence must support the ALJ's credibility findings. *See Cruse*, 502 F.3d at 542; *see also Walters*, 127 F.3d at 531.

Plaintiff's contention that the ALJ based his credibility determination only on Plaintiff's daily activities lacks merit. The ALJ noted that the record lacked evidence of adverse side effects from medication. The ALJ also noted that the record lacked evidence showing that Plaintiff needed hospitalization or surgical intervention for his physical impairments and that "treatment has been conservative." (Tr. 20). The ALJ observed further that Plaintiff's testimony about his burning-type pain is not supported by the record, and Plaintiff presently does not point to any physician treatment notes revealing that Plaintiff reported burning pain to one of his physicians.

The ALJ also relied on the results of Dr. Oza's examination of Plaintiff in January 2006. (Tr. 21). Dr. Oza reported normal muscle strength and reflexes in Plaintiff's lower extremities (Tr. 411) and only a ten-degree limitation in Plaintiff's range of motion in his dorsolumbar spine (Tr. 415). The ALJ further relied on Dr. Narayan's September 2006 report, which "reflect essentially normal findings regarding his alleged impairments, objectively and clinically." (Tr. 21; *see* Tr. 499-503).

Accordingly, Plaintiff's second assignment of error lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and
2. The case be terminated on the docket.

October 28, 2009

_____                                                      s/ Sharon L. Ovington
                                                            Sharon L. Ovington
                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).